**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

PAMELA J. MAHLER,

        Plaintiff,

vs.

FIRST DAKOTA TITLE LIMITED
PARTNERSHIP et al.,

        Defendants.

No. 16-CV-4127-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.*   *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . **2**

*III.*  *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . **3**

*IV.*  *SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . . . . **3**

*V.*   *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . **5**

    *A.*   *The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
    *B.*   *Mahler's Employment* . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
        *1.*   *2014 protected activities* . . . . . . . . . . . . . . . . . . . . . . . . **6**
        *2.*   *Mahler's performance* . . . . . . . . . . . . . . . . . . . . . . . . . **6**
        *3.*   *2015 protected activities* . . . . . . . . . . . . . . . . . . . . . . . **8**
        *4.*   *Mahler's termination* . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

*VI.*  *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

    *A.*   *Count I: Hostile Work Environment* . . . . . . . . . . . . . . . . . . **10**
        *1*   *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
        *2.*   *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
        *3.*   *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
            *a.*   **Protected activity** . . . . . . . . . . . . . . . . . . . . . . . . **11**
            *b.*   **Prima facie** *case* . . . . . . . . . . . . . . . . . . . . . . . **13**
                *i.*   *Protected class* . . . . . . . . . . . . . . . . . . . . . **13**
                *ii.*  *Unwelcome harassment* . . . . . . . . . . . . . . . . **13**

  B.  **McDonnell Douglas** *Burden-Shifting* . . . . . . . . . . . . . . . . . . . . . *18*

  C.  *Count I: Sex Discrimination* . . . . . . . . . . . . . . . . . . . . . . . . . *19*

    *1.*  *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . *19*

    *2.*  *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . . . *19*

    *3.*  *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *20*

      *a.*  **Prima facie** *case* . . . . . . . . . . . . . . . . . . . . . *20*

        *i.*  *Inference of discrimination* . . . . . . . . . . . . . *20*

      *b.*  *Pretext* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *22*

  D.  *Count II: Retaliation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *24*

    *1.*  *Direct evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . *24*

    *2.*  *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . *27*

    *3.*  *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . *27*

    *4.*  *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *28*

      *a.*  **Prima facie** *case* . . . . . . . . . . . . . . . . . . . . . *28*

        *i.*  *Causal connection* . . . . . . . . . . . . . . . . . . . *28*

      *b.*  *Pretext* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *30*

**VII.**  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *31*

## I. INTRODUCTION

  The matter before the court is Defendants First Dakota Title Limited Partnership ("First Dakota"), Community Title, LLC ("Community Title"), Dennis C. Anderson, Shirley A. Thoelke and Dean Hoag, Jr.'s (collectively, "Defendants") "Motion for Summary Judgment" ("Motion") (docket no. 23).

## II. RELEVANT PROCEDURAL HISTORY

  On November 10, 2016, Plaintiff Pamela J. Mahler filed a Complaint (docket no. 1) against Defendants. In Count I of the Complaint, Mahler alleges that Defendants violated her rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, and the Iowa Civil Rights Act ("ICRA"), Iowa Code § 216.6, by "requir[ing] Mahler to work in a hostile and pervasive atmosphere of discrimination and harassment due to retaliation for engaging in protected activity, and due to sex." Complaint ¶ 57. In Count II of the Complaint, Mahler alleges that Defendants retaliated against her in violation of Title VII and the ICRA. *Id.* ¶¶ 61-62. On January 13, 2017, Defendants filed

an Answer (docket no. 12) denying liability and asserting several affirmative defenses.

On November 13, 2017, Defendants filed the Motion. On December 15, 2017, Mahler filed a Resistance (docket no. 26). On December 22, 2017, Defendants filed a Reply (docket no. 27). No party has requested oral argument and the court finds that oral argument is unnecessary. The matter is fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court has original jurisdiction of the Title VII claims because they arise under the Civil Rights Act of 1964. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The district court has supplemental jurisdiction over the state law claims because they are so related to the claims within the court's original jurisdiction that they form part of the same case or controversy. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). In other words, "the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 77 F.3d 1063, 1067 (8th Cir. 1996) (second alteration in original) (quotation marks omitted) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988)).

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show'" an absence of a genuine dispute as to a material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)

(en banc) (quoting Fed. R. Civ. P. 56(c)(2)). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson*, 643 F.3d at 1042 (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

On a motion for summary judgment, the court must view the facts "in the light most favorable to the nonmoving party." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts' . . . ." *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586). Instead, "[t]o survive a motion for summary judgment, the nonmoving party must substantiate [her] allegations with sufficient probative evidence [that] would permit a finding in [her] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second alteration in original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)). Mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th Cir. 2010).

## V.  RELEVANT FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to the nonmoving party, and affording her all reasonable inferences, the uncontested material facts are as follows.

### A.  The Parties

Mahler is a resident of South Dakota and a former employee of Community Title. Complaint ¶¶ 3-4.  Community Title is a South Dakota limited liability company licensed to do business in the State of Iowa.  *Id.* ¶ 7.  First Dakota and D. Hoag, LLC ("D. Hoag") are the sole members and owners of Community Title.  Defendants' Statement of Undisputed Facts (docket no. 23-2) ¶ 4.  As such, First Dakota and D. Hoag operate Community Title, and hire and manage its employees.  Appendix in Support of Motion (docket no. 23-3) at 12.  First Dakota is a limited partnership based in Sioux Falls, South Dakota.  Defendants' Statement of Undisputed Facts ¶ 1.  Anderson is a resident of Sioux Falls, South Dakota, and is the chief executive officer of First Dakota.  Complaint ¶¶ 10,11.  Hoag is a resident of West Des Moines, Iowa.  *Id.* ¶ 15.  Hoag is the chief operating officer of Community Title and owns D. Hoag.  Defendants' Statement of Undisputed Facts ¶¶ 14-15.  Thoelke is a resident of Dell Rapids, South Dakota, and is the chief technology officer of First Dakota.  Complaint ¶¶ 13-14.

### B.  Mahler's Employment

The Title Resource Network ("TRN") is a tag line created by an advertising company designed to group First Dakota, Community Title and their subsidiaries under a joint title.  Defendants' Statement of Undisputed Facts ¶ 6.  Sedgwick Brennen Abstract Company ("Sedgwick Brennen"), which is located in Sioux City, Iowa, falls under the TRN umbrella.  *Id.* ¶¶ 6, 18; Plaintiff's Statement of Additional Facts (docket no. 26-3) ¶ 1.

On August 15, 2012, Mahler was hired by Community Title to be the Vice President of Sedgwick Brennen.  Plaintiff's Statement of Additional Facts ¶ 1.  At all

relevant times, Mahler was an employee of Community Title under 42 U.S.C. § 2000(e) and Iowa Code § 216, and Community Title was an employer under 42 U.S.C. § 2000(e) and Iowa Code § 216. Complaint ¶ 21. At all relevant times, Anderson was Mahler's direct supervisor. Defendants' Statement of Undisputed Facts ¶ 5. In October 2013, Mahler was promoted to Regional President of Northwest Iowa. *Id*. ¶ 21. As Regional President, Mahler was responsible for overseeing eight different businesses under the TRN umbrella, including the vice presidents of those businesses. *Id*. ¶ 24.

## 1.    *2014 protected activities*

In late 2013 or early 2014, Mahler reported to Thoelke and Anderson that Tom Underwood, one of the vice presidents under her supervision, was making demeaning and degrading comments to women in his office. *Id*. ¶ 69. In March 2014, Mahler reported to Anderson what she considered to be a complaint of discrimination or harassment, distinct from her prior report, on behalf of Charity Archer, a vice president under her supervision. *Id*. ¶¶ 70-71. Anderson subsequently resolved this issue. *Id*. ¶ 72. In April 2014, Mahler reported a sexual harassment complaint to Human Resources Director Clay Rees on behalf of a staff member. *Id*. ¶ 73. The staff member was being subjected to sexually harassing comments from a colleague. *Id*. ¶ 74. Following the complaint, the issue was resolved. *Id*. ¶¶ 75-76.

## 2.    *Mahler's performance*

In approximately April or May 2014, Anderson informed all staff "that [t]he [r]egional [p]residents were to be at 50,000 [feet] looking down over their regions and not involved in the day to day work." *Id*. ¶ 26; Appendix in Support of Resistance[1] at 26-27. Anderson further stated "[t]hat the staff needed to step up and manage their offices so that

---

[1] Mahler has filed her Appendix in Support of Resistance in six separate, consecutively paginated parts (docket nos. 26-4, 26-5, 26-6, 26-7, 26-8, 26-9). In this Order, the court shall refer to such consecutive pagination when citing the Appendix in Support of Resistance.

the [r]egional [p]residents could be visionaries and at 50,000 feet." Defendants' Statement of Undisputed Facts ¶ 26; Appendix in Support of Resistance at 26-27.

At some point in 2014, Archer contacted Thoelke to inquire about having Mahler moved out of the Sedgwick Brennan office where they both officed. Defendants' Statement of Undisputed Facts ¶ 30. Archer believed that Mahler was micromanaging the employees that Archer was supposed to supervise and that Mahler was overly involved in the office's day-to-day activities. Appendix in Support of Resistance at 133. Archer asked that Mahler's office be located elsewhere. Defendants' Statement of Undisputed Facts ¶ 30; Plaintiff's Response to Statement of Undisputed Facts ¶ 30. By the end of 2014, Mahler was moved from the Sedgwick Brennan office to the TRN Settlement Services office. Defendants' Statement of Undisputed Facts ¶ 27.

 On February 13, 2015, Anderson sent Mahler an email with an off-color joke and stated, "Hopefully the following will not offend you." Appendix in Support of Motion at 157-61. Mahler responded, "No offense taken and thank you I did get a good laugh out of it." *Id*. at 157.

That same month, staff at the TRN Settlement Services office requested a meeting with Rees. Defendants' Statement of Undisputed Facts ¶ 33; Appendix in Support of Motion at 137. The staff stated that "[t]hey did not like the way [Mahler] managed the office," "said that she micromanaged them, was always in their stuff" and "they felt they [could not] do anything."[2] Appendix in Support of Motion at 139. Rees provided this information to Anderson. Defendants' Statement of Undisputed Facts ¶ 36.

On approximately March 5, 2015, Mahler had a meeting with Anderson where he told her that he did not want her handling day-to-day business and told her "to be at 50,000

---

[2] Mahler denies this factual finding, contending that "[n]o one ever told [her] that she was micromanaging staff." Plaintiffs' Response to Statement of Undisputed Facts ¶ 30. That Mahler was not aware that staff perceived her to be micromanaging does not create a factual dispute.

feet." Appendix in Support of Motion at 122. In late March 2015, Mahler hired two individuals after Anderson had only authorized her to hire one. *See id.* at 29-30; Defendants' Statement of Undisputed Facts ¶¶ 39-41.

In April 2015, Mahler became involved with an issue regarding Union County Abstract and the Union County Register of Deeds. Defendants' Statement of Undisputed Facts ¶ 42. At that time, Union County was in the region overseen by Bobbi Jo Dondelinger, the Regional President of Southeast South Dakota. *Id.* ¶ 43. Mahler contacted the Union County Register of Deeds directly, rather than contacting Dondelinger. *Id.* ¶ 46. Dondelinger subsequently reported this issue to Anderson. *Id.* ¶ 48. Anderson believed that Mahler had "inserted herself," created "a much larger issue than it needed to be" and that Mahler should have let Dondelinger address the situation. Appendix in Support of Motion at 26. On April 21, 2015, Anderson sent an email to Thoelke and Dondelinger stating,

> After my conversation with [Dondelinger] today, it is possible that [Mahler] may cause more problems than we will want to deal with. While I do not expect a major catastrophe to occur before I return on May 4th, I want each of you to know that you have my confidence and support to handle any issue with the Sioux City office as may be necessary, including termination.

Appendix in Support of Motion at 149.

### 3.    *2015 protected activities*

Between May 18, 2015, and May 22, 2015, Archer contacted Mahler to report alleged sexual harassment by Aaron Hansen, a vice president under Mahler's supervision. Defendants' Statement of Undisputed Facts ¶ 77. Mahler reported this complaint to Rees, who subsequently reported the complaint to Anderson. *Id.* ¶¶ 77-78. Mahler also informed Anderson that Hansen was harassing women generally. *Id.* ¶ 80. Rees and Thoelke looked into the complaints and Rees spoke with Hansen regarding the

inappropriate nature of his comments.  *Id*. ¶¶ 81, 83.  In May 2015, Mahler also reported a complaint of age discrimination to Rees on behalf of Sandy Hall, a processor at the TRN Settlement Services office.  *Id*. ¶ 85.

### 4.    *Mahler's termination*

On June 1, 2015, Anderson called Mahler to a meeting with himself and Thoelke.  *Id*. ¶ 53.  At that meeting, Anderson addressed the chain of command with Mahler.  *Id*.  Anderson and Thoelke instructed Mahler that going forward she should work with her office door closed and avoid involvement with day-to-day staff issues.  *Id*. ¶ 55.

On June 8, 2015, Mahler reported to Rees an inappropriate remark that Hansen had made to Archer.  Defendants' Statement of Undisputed Facts ¶ 88.  On June 10, 2015, Mahler reported to Rees that Archer and Shannon Norton, another vice president, believed that they were being compensated less than their male counterparts.  *Id*. ¶ 90.

On June 11, 2015, Hansen instructed one of his employees to travel to the TRN Settlement Services office to provide coverage for the day.  *Id*. ¶ 59.  The employee reached out to Mahler, who contradicted Hansen's instruction and told the employee that she did not need to travel to the TRN Settlement Services office.  *Id*. ¶¶ 60-61.  On June 15, 2015, Anderson terminated Mahler.  *Id*. ¶ 62.  Mahler was replaced by Dondelinger, a woman, as Regional President of Northwest Iowa.  *Id*. ¶ 68.

## VI.  ANALYSIS

The Complaint, while captioned as two counts, actually alleges three distinct claims.  First, Mahler alleges that she was subjected to a hostile work environment in retaliation for engaging in a protected activity and due to her sex.  Complaint ¶ 57.  Second, Mahler alleges that she was discriminated against in retaliation for engaging in a protected activity and due to her sex.  *Id*.  Third, Mahler alleges that she was retaliated against for reporting both discrimination and a hostile work environment.  *Id*. ¶¶ 61-62.  The court shall address each claim in turn.

### A.  Count I: Hostile Work Environment

Mahler alleges that she was subjected to a hostile work environment in retaliation for engaging in a protected activity and due to her sex.

### 1.  Parties' arguments

Defendants allege that they are entitled to summary judgment on Mahler's hostile work environment claim for two reasons.  First, Defendants contend that a hostile work environment claim must be based on a protected classification and not, as Mahler asserts, on a protected activity.  Brief in Support of Motion (docket no. 23-1) at 11-12.  Second, Defendants argue that Mahler did not personally suffer sexual harassment and, thus, she cannot maintain a hostile work environment claim.  *Id*. at 12-13.

Mahler argues that it is settled law that hostile work environment claims can be based on retaliation.  Brief in Support of Resistance (docket no. 26-1) at 4-5.  She also asserts that her hostile work environment claim is based on both the email that she received from Anderson containing an off-color joke and "the larger milieu of harassment that occurred in Defendants' workplace."  *Id*. at 6.

### 2.  Applicable law

"Discrimination based on sex that creates a hostile working environment violates Title VII."  *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1068 (8th Cir. 2005).  "To set forth a *prima facie* case of a hostile work environment, [a plaintiff] must demonstrate '(1) that [she] is a member of a protected group; (2) that she was subject to unwelcome harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition or privilege of her employment.'"  *Anderson v. Family Dollar Stores of Ark., Inc.*, 579 F.3d 858, 862 (8th Cir. 2009) (second alteration in original) (quoting *Henthorn v. Capitol Commc'ns, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004)).  "[T]o succeed on a hostile work environment claim under Title VII, a plaintiff must show 'that the conduct at issue was not merely tinged with offensive sexual connotations, but actually

constituted "discrimination because of sex."'" *Pedroza*, 397 F.3d at 1068 (alterations omitted) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). "Hostile work environment harassment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 823 (8th Cir. 2017) (alteration in original) (quoting *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 805 (8th Cir. 2013)). "The standard for demonstrating a hostile work environment under Title VII is 'demanding,' and 'does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace.'" *Id.* (quoting *Jackman*, 728 F.3d at 806). "Because the elements of a hostile work environment claim under [the] ICRA 'mirror' the elements under the federal law we address the federal and state claims together." *Sellers v. Deere & Co.*, 791 F.3d 938, 945 n.6 (8th Cir. 2015) (citations omitted).

### 3. *Application*

#### a. *Protected activity*

Defendants contend that they are entitled to summary judgment on Mahler's hostile work environment claim to the extent it is based on a protected activity rather than a protected classification. Brief in Support of Motion at 11-12. Mahler's hostile work environment claim is based, in part, on retaliation she allegedly suffered for reporting harassment and discrimination purportedly suffered by other employees. Mahler relies on *Stewart v. Independent School District No. 196*, 481 F.3d 1034 (8th Cir. 2007) and *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), to support her argument that "it is settled law that hostile work environment claims based on retaliation can be made." Brief in Support of Resistance at 4-5.

Neither of these cases support Mahler's position. Rather, in *Burlington Northern*,

the United States Supreme Court "expressly held that retaliation claims under Title VII could be based on a hostile work environment." *Stewart*, 481 F.3d at 1042 (addressing the plaintiff's retaliation claims in light of *Burlington Northern*, where the plaintiff claimed she was subjected to a hostile work environment in retaliation for filing an EEOC complaint). In so holding, the Court "establish[ed] a standard to define the concept of a hostile work environment for the purpose of retaliation claims under Title VII." *Id.*; *see also Burlington N.*, 548 U.S. at 68 (concluding that, in Title VII retaliation claims, actions are materially adverse and are actionable if the actions "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" (quotation marks omitted)). Simply, these cases hold that an employee can bring a retaliation claim alleging that they were subjected to a hostile work environment for engaging in a protected activity.

These cases do not, however, support Mahler's argument that an employee can bring a hostile work environment claim based on retaliation that they allegedly suffered. As the Court explained, these provisions of Title VII "differ not only in language but in purpose as well." *Burlington N.*, 548 U.S. at 63. "The substantive provision [of Title VII] seeks to prevent injury to individuals based on who they are, *i.e.*, their status." *Id.* at 63. Contrarily, "[t]he antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct." *Id.* Neither the purposes of Title VII nor the cases cited by Mahler support a hostile work environment claim based on alleged retaliation.

Further, Mahler's argument makes clear that she is raising a retaliation claim. *See* Brief in Support of Resistance at 5 ("Defendants concede that Mahler engaged in protected activity, so the question before the [c]ourt is whether or not she [was] subjected to the adverse employment action of a hostile work environment based on retaliation and sex."). Engaging in a "protected activity" and being subjected to an "adverse employment action"

are elements of a retaliation claim, not a hostile work environment claim. *See DePriest v. Milligan*, 823 F.3d 1179, 1187 (8th Cir. 2016) (enumerating the elements of a Title VII retaliation claim). Therefore, to the extent that Mahler's claim alleges that she was subjected to a hostile work environment in retaliation for engaging in a protected activity, the law does not support such a cause of action and Defendants are entitled to summary judgment. To the extent that Mahler is raising a retaliation claim, the court shall address her claim in section VI(D).

### b. Prima facie *case*

Mahler also brings a hostile work environment claim based on her sex. Defendants argue that because Mahler did not personally suffer sexual harassment, she cannot maintain a hostile work environment claim. Brief in Support of Motion at 12-13. Mahler contends that her hostile work environment claim "does not rest solely on th[e] email" she received from Anderson, but "instead, it is a part of the larger milieu of harassment that occurred in Defendants' workplace." Brief in Support of Resistance at 6.

### i. *Protected class*

As addressed above, Mahler's hostile work environment claim must be based on her protected group status. Viewing the facts in the light most favorable to Mahler, she has established that her sex makes her a member of a protected class. *See Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996) ("[M]embership in a protected group . . . is satisfied by showing that the plaintiff employee is a man or a woman.").

### ii. *Unwelcome harassment*

With the exception of the email containing the off-color joke, Mahler does not provide evidence of any other act of harassment that was directed at her. Rather, Mahler attempts to establish her *prima facie* case by relying on the alleged acts of harassment to which other employees were subjected. *See* Brief in Support of Resistance at 6-7. Although Mahler acknowledges that this alleged harassment, was "not perpetrated against

her, individually," she contends that "does not mean that those hostile acts which she is aware of cannot be considered as a part of her larger hostile work environment claim." *Id.* at 7.

Eighth Circuit case law establishes that the harassment of other employees may be relevant to a hostile work environment claim. *See, e.g.*, *Stewart v. Rise, Inc.*, 791 F.3d 849, 859 (8th Cir. 2015) ("[W]e have held evidence that a decisionmaker tolerated a hostile environment can be relevant to the question of whether that decisionmaker later terminated an employee due to a discriminatory motive."); *Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936, 943 (8th Cir. 2010) (noting "that slurs and other incidents evidencing racial animus were directed at co-workers in the same protected group" and concluding that "[t]his is relevant in assessing the existence of a hostile work environment, particularly where as here, the plaintiffs were aware of this conduct"). However, Mahler still has the burden of establishing that she herself was subject to unwelcome harassment. *See Blake v. MJ Optical, Inc.*, 870 F.3d 820, 827 (8th Cir. 2017) ("To prove a hostile work environment, [the plaintiff] must show . . . she was subject to unwelcome harassment . . . .") (quotation marks omitted) (quoting *Sellers*, 791 F.3d at 945), *petition for cert. filed* (U.S. Jan. 23, 2018) (No. 17-1015); *Anderson*, 579 F.3d at 862 ("To set forth a *prima facie* case of a hostile work environment, [the plaintiff] must demonstrate . . . that she was subjected to unwelcome harassment . . . .") (alteration and quotation marks omitted) (quoting *Henthorn*, 359 F.3d at 1026); *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004) ("To prevail, [the plaintiff] was required to show . . . he was subjected to unwelcome harassment . . . .").

In those cases in which the plaintiff introduced evidence of harassment suffered by other employees, the plaintiff also established that he or she was personally harassed. *See Hocevar v. Purdue Frederick Co.*, 223 F.3d 721, 741 (8th Cir. 2000) (Gibson, J., concurring) ("'We have considered harassment of employees other than the plaintiff to be

relevant to show pervasiveness of the hostile work environment.' However, in the cases in our circuit where we have considered conduct directed at others in upholding sexual harassment claims, that conducted augmented evidence of harassment directed at the plaintiff." (citations and emphasis omitted)); *see also Madison v. IBP, Inc.*, 257 F.3d 780, 793 (8th Cir. 2001) ("Here, [the plaintiff] introduced evidence that other women and African American employees were *also* discriminated against and harassed." (emphasis added)), *overruled on other grounds by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004); *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 838 (8th Cir. 1998) (considering evidence "that [a co-employee] said and did inappropriate things to other female employees" where the plaintiff also testified to harassment she personally experienced). Therefore, to the extent the court may consider evidence of harassment suffered by other employees, the court shall do so only after finding that Mahler was subjected to harassment.

To establish harassment, Mahler need not show that the alleged harassment was "explicitly sexual in nature" or that it had "explicit sexual overtones." *Quick*, 90 F.3d at 1377. "The proper inquiry is whether [the plaintiff] indicated by her conduct that the alleged harassment was unwelcome." *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 966 (8th Cir. 1999) (second alteration in original) (quoting *Quick*, 90 F.3d at 1378); *see also Beard v. Flying J, Inc.*, 266 F.3d 792, 798 (8th Cir. 2001). "[T]he conduct at issue must be 'unwelcome' in that the plaintiff neither solicited it nor invited it and regarded the conduct as undesirable or offensive." *Scusa*, 181 F.3d at 966.

As noted above, Mahler does not dispute that the sole act of alleged harassment perpetrated against her was the email that she received from Anderson. Brief in Support of Resistance at 7. The email from Anderson stated, "Hopefully the following will not offend you. You have had a rough week and may be in need of a chuckle or two." Appendix in Support of Motion at 158. The email included an off-color joke. *Id.* at 159-

60.  Mahler responded to Anderson, "No offense taken and thank you I did get a good laugh out of it." *Id.* at 157.  Mahler further stated, "Thanks for the laugh." *Id.* at 158. Nothing in Mahler's response indicates that the email she received was unwelcome, and she does not provide the court with any evidence to support a contrary conclusion.  This is fatal to her claim. *See Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1047-48 (8th Cir. 2005) ("[A]n employee's admission that [the environment] was not abusive is fatal to the employee's Title VII sexual harassment claim.").  Because Mahler was not personally subjected to unwelcome harassment, she cannot establish a *prima facie* case for hostile work environment harassment.

Even assuming that Mahler could establish that the email she received was unwelcome harassment, her claim would still fail.  Although there is no "rule of law holding that a single incident can never be sufficiently severe to be hostile-work-environment sexual harassment," *Moring v. Ark. Dep't of Corr.*, 243 F.3d 452, 456 (8th Cir. 2001), "[h]ostile work environment claims are assessed based on the totality of the circumstances." *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 809 (8th Cir. 2008).  Courts consider a variety of nondispositive factors in assessing whether a claimant has presented evidence of a hostile work environment such as: "the frequency of the discriminating conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  "To constitute a hostile work environment, the harassment must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gordon v. Shafer Contracting Co.*, 469 F.3d 1191, 1195 (8th Cir. 2006) (quoting *Harris*, 510 U.S. at 21).  Generally, "'[m]ore than a few isolated incidents are required,' and the alleged harassment must be 'so intimidating, offensive, or hostile that it poisoned the work environment.'" *Blomker v. Jewell*, 831 F.3d 1051, 1057 (8th Cir. 2016) (quoting *Scusa*,

181 F.3d at 967); *see also Gordon*, 469 F.3d at 1195 (concluding that where a coworker and a supervisor "made three to four racially offensive comments to [the plaintiff] and additional sexually offensive comments to [the plaintiff]" the "limited number of offensive comments [was] insufficient to create a hostile work environment").

Even assuming that the email Anderson sent to Mahler was unwelcome harassment, this single incident does not satisfy the threshold of proof required to create an objectively hostile work environment. *Compare Willis v. Henderson*, 262 F.3d 801, 809 n.4 (8th Cir. 2001) (concluding that "in the present case the single incident involving the racist cartoon did not create a hostile work environment"), *with Moring*, 243 F.3d at 456-57 (concluding that there was sufficient evidence to allow a reasonable jury to find that a single incident "was severe enough to alter the terms and conditions of [the plaintiff's] employment" where her supervisor "knocked on [her hotel room] door clothed only in boxer shorts," "repeatedly insisted that [she] 'owed' him for her job," "would not leave the hotel room, although [the plaintiff] repeatedly asked him to leave," and "he sat on her bed, touched her thigh and leaned in as if to kiss her"), *and Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1159 (8th Cir. 1999) (finding that a supervisor's fondling of his genitals in front of the victim and his use of lewd and sexual language was sufficiently offensive to alter the victim's working conditions), *abrogated on other grounds by Torgerson*, 164 F.3d 1151. Further, although evidence of Hansen's alleged harassment of Archer "may be relevant in a mine-run discriminatory termination case," the Eighth Circuit has found that when "the terminated employee herself was a supervisor over the alleged offenders" this evidence is less relevant. *Stewart*, 791 F.3d at 859. Thus, the court finds that evidence of harassment perpetrated by Mahler's subordinates is of limited relevance in determining if Mahler was subjected to a hostile work environment.

In sum, the email Mahler received from Anderson does not satisfy the required threshold of proof to create a genuine issue of fact. Therefore, Defendants are entitled to

summary judgment on Mahler's hostile work environment claim.

## B. McDonnell Douglas *Burden-Shifting*

As to her remaining two claims, Mahler may demonstrate that she has been subject to discrimination or retaliation in violation of Title VII by employing either direct or indirect evidence. *See Liles*, 851 F.3d at 818, 821. "Direct evidence of discrimination must show 'a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.'" *Hutton v. Maynard*, 812 F.3d 679, 683 (8th Cir. 2016) (quoting *Russell v. City of Kan. City*, 414 F.3d 863, 866 (8th Cir. 2005)). Such evidence "encompasses comments or statements indicating discriminatory intent, where those comments are made by people with decision-making authority." *Id*. If the court concludes that Mahler has not produced direct evidence of discrimination or retaliation she must demonstrate the existence of a genuine dispute of material fact regarding indirect evidence of discrimination or retaliation.

Courts analyzing indirect discrimination claims apply the familiar *McDonnell Douglas* burden-shifting framework. *See Grant v. City of Blytheville*, 841 F.3d 767, 773 (8th Cir. 2016); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> Under this framework, if an employee carries [her] burden of establishing a *prima facie* case of discrimination, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. If the employer meets this burden of production, the employee must then "prove beyond a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination."

*Grant*, 841 F.3d at 773 (second alteration in original) (citation omitted) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). "Although the 'burden of establishing a *prima facie* case . . . is not onerous,' the plaintiff must satisfy every element of [her] *prima facie* case, carrying at all times the 'ultimate burden of proof and

persuasion' to establish that the employer discriminated against [her] on an impermissible basis.'" *Id.* (first alteration in original) (quoting *Torgerson*, 643 F.3d at 1046-47). The same analytical framework is applicable to Mahler's claims under the ICRA. *See Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1147 (8th Cir. 2008) ("In most respects, Iowa courts have used the analytical framework used for Title VII claims, and have looked to federal law for guidance, in deciding cases under the ICRA because the ICRA is modeled in part on Title VII."). The court shall address Mahler's remaining claims utilizing this framework.

### C. Count I: Sex Discrimination

Mahler alleges that she was subjected to discrimination in retaliation for engaging in a protected activity and due to her sex. Complaint ¶ 57. To the extent that Mahler raises a discrimination claim based on retaliation, Defendants are entitled to summary judgment for the reasons stated in section VI(A)(3)(a), as the law does not support such a cause of action. The court shall address Mahler's claim that she was discriminated against due to her sex.

#### 1. Parties' arguments

Defendants do not dispute that Mahler's "sex made her a member of a protected class," that Mahler "possessed the necessary basic qualifications for her position" nor that Mahler's "termination was an adverse action." Brief in Support of Motion at 15. However, Defendants assert that Mahler cannot satisfy her *prima facie* burden because she cannot establish an inference of discrimination. *Id.*

#### 2. Applicable law

Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). In this way, Title VII prohibits employment discrimination based on suspect

classifications.  To establish a *prima facie* case of sex discrimination, Mahler "must show that: (1) she was a member of the protected group; (2) she was qualified to perform the job; (3) she suffered an adverse employment action; and (4) circumstances permit an inference of discrimination." *Bearden v. Int'l Paper Co.*, 529 F.3d 828, 831 (8th Cir. 2008).  Because Mahler has presented no separate arguments under the ICRA, the court shall address her state civil rights claim together with her Title VII claim.  *See Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1046 (8th Cir. 2003).

### 3.    *Application*

Defendants assert that they are entitled to summary judgment on Mahler's claim of discrimination based on sex because Mahler cannot show an inference of discrimination as required to satisfy her burden of establishing a *prima facie* case.  *See* Brief in Support of Motion at 14-16.  Mahler has not alleged any direct evidence that she was terminated as a result of her sex.  Therefore, the court shall address her claim under the *McDonnell-Douglas* burden shifting framework.

#### a.    **Prima facie** *case*

##### i.    *Inference of discrimination*

A plaintiff can establish an inference of discrimination

> in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in a protected class, [by showing] biased comments by a decisionmaker or by showing pretext with evidence than an employer failed to follow its own policies or shifted its explanation of the employment decision.

*Grant*, 841 F.3d at 774 (alteration in original) (citations and quotation mark omitted); *see also Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1040 (8th Cir. 2010) (noting that, in a sex discrimination case, the critical inquiry is not merely whether an employer has treated female employees differently from male employees, but whether an employer discriminates against an employee based on his or her sex).  If an employee seeks to

demonstrate that similarly situated employees not belonging to a protected class were treated more favorably, the employee bears the burden of producing such employees and must prove, by a preponderance of the evidence, that the other employees were "similarly situated in all respects to her." *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003). "The individuals used as comparators 'must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" *Id*. This inquiry is a "rigorous" one. *See Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 568 (8th Cir. 2000) (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994)); *see also Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008) ("The test [to determine whether employees were similarly situated] is rigorous and requires that the other employees be similarly situated in all relevant aspects before the plaintiff can introduce evidence comparing herself to the other employees.").

Here, Mahler has failed to present any facts giving rise to an inference of causation. The Complaint merely states that "discrimination continued, leading to her termination from employment," Complaint ¶ 58, and the Resistance fails to point the court to any facts that would support such an inference. Mahler does not point to any similarly situated male employees that were treated differently. The court recognizes that "[c]omparative evidence is certainly not the 'exclusive means by which a plaintiff may establish an inference of discrimination.'" *Lewis*, 591 F.3d at 1040 (quoting *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1022 (8th Cir. 1998)). However, Mahler's failure to present any evidence is fatal to her claim.

Additionally, after Mahler's termination, she was replaced as regional president by Dondelinger, another woman, which undercuts an inference of discrimination. *See Stewart*, 791 F.3d at 858 (affirming summary judgment on a discriminatory termination claim based on race and sex and concluding that where the plaintiff's "predecessor as

branch manager, as well as her successor, were American-born African-American women," as was the plaintiff, there was "little support for an inference that discrimination . . . motivated the termination"); *Roach v. Vallen Safety Supply, Co.*, 14 F. App'x 711, 712 (8th Cir. 2001) (finding that the plaintiff did not establish a prima facie case of discriminatory termination based on gender where "she was replaced by a female").

"While 'the burden of establishing a *prima facie* case of disparate treatment is not onerous,' the plaintiff must be able to produce some evidence of similarity between her and her comparator." *Rebouche v. Deere & Co.*, 786 F.3d 1083, 1087-88 (8th Cir. 2015) (alteration and citation omitted). Here, Mahler has failed to produce any evidence that would support such a claim and the undisputed facts do not support an inference of discrimination sufficient to meet this standard. The court finds that the Mahler has failed to plead facts establishing a *prima facie* case that she was terminated due to her sex.

### b.      Pretext

However, even assuming that Mahler is able to establish a *prima facie* case of sex discrimination, she fails to demonstrate that her termination was pretextual. Defendants state that Mahler was fired due to her repeated interference with staff, micromanaging, over involvement in day-to-day operations and involvement in staffing issues despite repeated warnings from Anderson. *See* Defendants' Statement of Undisputed Facts ¶¶ 30-33, 39-41. Therefore, the burden shifts back to Mahler to demonstrate the existence of a genuine issue of material fact regarding pretext. Mahler cannot do so.

The Eighth Circuit Court of Appeals has stated:

> There are at least two routes by which a plaintiff may demonstrate a material question of fact at this final stage of the [*McDonnell Douglas*] analysis. First, a plaintiff may succeed indirectly by showing that the employer's proffered explanation is unworthy of credence because it has no basis in fact. Second, a plaintiff may succeed directly by persuading the court that a prohibited reason more likely motivated the employer.

*Dixon v. Pulaski Cty. Special Sch. Dist.*, 578 F.3d 862, 869 (8th Cir. 2009) (quoting *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006)), *abrogated on other grounds by Torgerson*, 643 F.3d 1031. Mahler cannot prevail under either route. The record is replete with evidence supporting Defendants' position. *See, e.g.*, Appendix in Support of Motion at 29-30, 32, 33; Defendants' Statement of Undisputed Facts ¶¶ 39-42, 47, 59-61. Mahler has not demonstrated that Defendants' justification for terminating her is false. No evidence in the record directly contradicts Defendants' stated purpose for its actions. To the contrary, Anderson's April 21, 2015 email authorizing Mahler's termination bolsters the conclusion that Mahler's repeated interference with staff, rather than her sex, was the reason for her termination. Mahler's assertions that she believed that her actions were justified or did not perceive them to be micromanaging does not created a genuine issue of fact or establish pretext. Therefore, Mahler cannot prevail under the first route.

Under the second route, Mahler need not necessarily disprove Defendants' proffered justification. Instead, she "must adduce enough admissible evidence to raise genuine doubt as to the legitimacy of [Defendants'] motive, even if that evidence does not directly contradict or disprove [Defendants'] articulated reasons for its actions." *Dixon*, 578 F.3d at 870 (quoting *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 717 (8th Cir. 2000)). Mahler cannot do so. Mahler's unsworn, self-serving statements and documents in the record do not give rise to a question of fact regarding pretext. *See id*. at 872 ("A reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." (quoting *Floyd v. Mo. Dep't of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 937 (8th Cir. 1999))). Mahler's lack of evidence of pretext, coupled with the weak showing in her *prima facie* case, fails to survive summary judgment on this issue. *See Wallace*, 442 F.3d at 1120 n.2 (noting that "a strong *prima facie* case coupled with proof of pretext may suffice to create a triable

question of fact").

Accordingly, the court shall grant the Motion with respect to Mahler's discrimination claim.

### D. Count II: Retaliation

Mahler alleges that Defendants retaliated against her for reporting the alleged sexual harassment and age discrimination suffered by other employees.

#### 1. Direct evidence

Mahler contends "that there is direct evidence of retaliation from a variety of statements made by Defendants in the record." Brief in Support of Resistance at 11. Mahler specifically cites the following: (1) Anderson's statement to Shannon Norton, a vice president supervised by Mahler, asking Norton to give Hansen another shot, admitting that Hansen had been inappropriate but that the matter had been handled, stating that Mahler had "egged" Archer on to pursue the claim and that Mahler "got us all riled up about stuff that didn't matter"; (2) Thoelke's statement to Archer on June 2, 2015, that "Mahler tended to 'embellish'"; and (3) Thoelke's statement to Archer on June 4, 2015, telling "Archer to keep on eye on Mahler." Id.

"[D]irect evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Aulick v. Skybridge Ams., Inc., 860 F.3d 613, 620 (8th Cir. 2017) (alteration in original) (quoting Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007)). "Direct evidence provides a strong causal link between the alleged discriminatory bias and the adverse employment decision." Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc., 826 F.3d 1149, 1160 (8th Cir. 2016) (quoting McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 861 (8th Cir. 2009)). "The bias . . . must be that of the decision maker and must relate to the decisional process." Id. Courts have interpreted

direct evidence "as 'conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude.'" *Browning v. President Riverboat Casino-Mo., Inc.*, 139 F.3d 631, 634 (8th Cir. 1998) (quoting *Thomas v. First Nat'l Bank*, 111 F.3d 64, 66 (8th Cir. 1997)).

However, "[n]ot all comments that reflect a discriminatory attitude will support an inference that an illegitimate criterion was a motivating factor in an employment decision." *Id.* at 635 (quoting *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993)). "For example, 'direct evidence' does not include 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself.'" *Id.* (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989)). "Direct evidence does not include statements by decisionmakers that are facially and contextually neutral." *Aulick*, 860 F.3d at 620 (quoting *Torgerson*, 643 F.3d at 1045). "If a plaintiff produces direct evidence, evidence of the employer's motives for a termination is an issue for trial, not summary judgment." *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011).

As to the first statement, there is no dispute that Anderson was Mahler's supervisor and that he was a decisionmaker in Mahler's termination. *See* Defendants' Statement of Undisputed Facts ¶ 9. However, this statement was made to Norton, a vice president who had been under Mahler's supervision, in December 2015. *See id.* ¶ 24; Appendix in Support of Resistance at 164. Mahler was terminated on June 15, 2015, and thus, this statement was neither made in the decisionmaking context nor to someone involved in that process. As such, the court concludes that the statements by Anderson are not direct evidence of retaliation. *See Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1153 (8th Cir. 2007) (concluding that statements were not direct evidence because, even "[a]ssuming [the speaker] was a decisionmaker," "[t]he comments were not related to the decisional process . . . and both were made to employees not involved in the decisional process"); *Twymon*

*v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) (concluding that remarks were not direct evidence because "none of the statements . . . were related to the decisional process itself" and "none of the statements . . . were made during the decisional process accompanying [the employer's] termination of [the plaintiff]"). *C.f. Young-Losee*, 631 F.3d at 912 (finding direct evidence that an employee "was terminated in retaliation for filing a formal complaint of harassment" where a plant supervisor "wadded up [her] complaint, called it 'total bullshit,' threw it in the garbage can, told [her] to leave, and said he never wanted to see [her] again'").

As to the second and third statements, Mahler admits that Anderson was the sole decisionmaker regarding her termination. Defendants' Statement of Undisputed Facts ¶ 63; Plaintiff's Response to Statement of Undisputed Facts ¶ 63. Further, Mahler admits that Thoelke had no authority to terminate her and that Thoelke had no responsibility for the decision to terminate her. Therefore, any statements made by Thoelke do not constitute direct evidence of retaliation. *See Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 966 (8th Cir. 2006) (noting that "'statements by nondecisionmakers[]' . . . do not constitute direct evidence" (quoting *Radabaugh*, 997 F.2d at 449)).

However, even assuming that Thoelke was a decisionmaker, the alleged statements cited by Mahler do not constitute direct evidence of retaliation. If made, Thoelke's statements that Mahler "embellished" or her request to an employee to "keep an eye on Mahler" require an inference that they refer to Mahler's protected activities. Mahler does not cite any case finding direct evidence of retaliation on similar facts. Nothing in these statements clearly connects Defendants' decision-making process with an illegal motive. *See Massey-Diez*, 826 F.3d at 1161 (concluding that "[t]here [was] not direct evidence imputing any alleged bias on . . . the group's decision not to renew [the employee's] contract"). The court finds that the required inference compels the conclusion that neither

of Thoelke's statements constitute direct evidence of discrimination. *See McCullough*, 559 F.3d at 861 (noting that direct evidence "most often comprises remarks by decisionmakers that reflect, without inference, a discriminatory bias"); *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 725 (8th Cir. 2001) ("Making this comment into evidence of age animus requires an inference, and the comment therefore does not directly reflect an attitude of discrimination based on age."). Therefore, the court shall analyze Mahler's retaliation claim under the burden-shifting framework of *McDonnell Douglas*.

## 2. Parties' arguments

Defendants do not dispute that Mahler engaged in multiple acts of protected activity between 2013 and 2015. Defendants also do not dispute that Mahler's termination was an adverse action. Therefore, the only element at issue is whether the circumstances permit an inference of discrimination. Defendants assert that Mahler is unable to establish that her protected activity was the reason for her termination. Brief in Support of Motion at 18-21. Mahler argues that "the evidence of temporal proximity in this case is so strong that, in and of itself, it is sufficient for a jury to find that her termination was unlawful due to retaliation." Brief in Support of Resistance at 12.

## 3. Applicable law

Title VII makes it unlawful for an employer "to discriminate against any individual . . . because [she] has opposed any [unlawful employment] practice . . . or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). In this way, Title VII prohibits retaliation for engaging in protected activity related to allegations of discrimination or sexual harassment. "To establish a *prima facie* case of retaliation, a plaintiff must show that: '(1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two.'" *DePriest*, 823 F.3d at 1187 (quoting *Fiero v. CGS Sys., Inc.*, 759 F.3d 874, 880 (8th Cir.

2014)). "Further, retaliation must be the 'but for' cause of the adverse employment action." *Jackman*, 728 F.3d at 804; *see also Blomker*, 831 F.3d at 1059 (noting that "[i]t is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision" to take the adverse employment action (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90-91 (2d Cir. 2015))).

"The ICRA similarly makes retaliatory action unlawful." *Rebouche*, 786 F.3d at 1088 (8th Cir. 2015) (citing Iowa Code § 216.11(2)). The court shall analyze Mahler's ICRA retaliation claim using the same method as the federal retaliation claims. *Young-Losee*, 631 F.3d at 912 ("This court analyzes ICRA retaliation claims under the 'same method as federal retaliation claims.'" (quoting *Smith v. Allen Health Sys.*, 302 F.3d 827, 836 (8th Cir. 2002), *abrogated on other grounds by Torgerson*, 643 F.3d 1031)). However, under the ICRA, Mahler must show that "the protected activity was a significant factor motivating the adverse employment action." *See Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 586 (Iowa 2017).

### 4.    *Application*

Defendants argue that they are entitled to summary judgment because Mahler is unable to establish that her protected activity caused her termination. Mahler argues that the evidence of temporal proximity is sufficient for a jury to find that her termination was unlawful retaliation.

### a.    **Prima facie** *case*

### i.    *Causal connection*

"The timing of an adverse employment action in connection with the protected activity 'can sometimes establish causation for purposes of establishing a *prima facie* case.'" *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 915 (8th Cir. 2006) (quoting *Sherman v. Runyon*, 235 F.3d 406, 410 (8th Cir. 2000)). "As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes

weaker and requires stronger alternate evidence of causation." *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011). The Eighth Circuit has concluded that a termination that occurs "two weeks from the protected activity, is close enough to establish causation in a *prima facie* case." *Peterson v. Scott Cty.*, 406 F.3d 515, 525 (8th Cir. 2005), *abrogated on other grounds by Torgerson*, 643 F.3d 1031; *see also Smith*, 302 F.3d at 833 (finding two-week gap "sufficient, but barely so, to establish causation").

The court notes that the majority of Mahler's protected activity occurred approximately one month prior to her termination, which alone would be insufficient to establish a *prima facie* case. *See Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1088 (8th Cir. 2010) (finding that a one month gap is not close enough to establish a *prima facie* case absent additional evidence). However, Mahler also engaged in protected activity on June 8, 2015, and June 10, 2015. Defendants' Statement of Undisputed Facts ¶¶ 88, 90. The court finds that the temporal proximity between Mahler's June 2015 activities and her termination supports an inference of causation. Aside from this temporal proximity, Mahler does not posit any other evidence of causation. *See Bainbridge*, 378 F.3d at 761 (concluding that temporal proximity of six days coupled with other evidence was sufficient to create a jury question).

While the temporal proximity supports an inference of causation, the inference is significantly weakened by Anderson's April 21, 2015 email authorizing Mahler's termination nearly two months before Mahler's most recent reports of alleged harassment. *See Carrington v. City of Des Moines*, 481 F.3d 1046, 1051 (8th Cir. 2007) ("Evidence of an employer's concerns about an employee's performance before the employee's protected activity undercuts a finding of causation." (quoting *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 504 (8th Cir. 2005))). Further, Mahler's history of engaging in protected activities weakens any causal connection. Over the course of her employment, Mahler raised a number of allegations of harassment without any negative response from

Defendants.  Mahler's later complaints, made after Defendants had concerns about her performance, do not insulate Mahler from discipline for disrupting the workplace.  *See id*. ("[P]ost-hoc complaints d[o] not without more raise a retaliation bar to the proposed discipline because 'the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace.'" (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 738 (8th Cir. 2004))).  Additionally, Mahler's act of contradicting Hansen's instruction to his staff occurred a mere four days prior to her termination.  *See* Defendants' Statement of Undisputed Facts ¶¶ 59-61.  Thus, although the proximity of two weeks may be sufficient to support the inference of causation in some cases, the court finds that the countervailing evidence, and lack of supporting evidence, prevents timing alone from creating an inference of retaliation in this case.

## 2.    *Pretext*

Even if Mahler could establish a *prima facie* case, her claim would still fail because she cannot demonstrate that Defendants' legitimate, non-discriminatory reason for her termination—her failure "to stop micromanaging her staff and interfering in the day-to-day work of the offices she managed"—was a pretext for retaliation.  Brief in Support of Motion at 8.  Temporal "proximity alone is insufficient to establish pretext."  *Gibson v. Geithner*, 776 F.3d 536, 541 (8th Cir. 2015).  "Rather, [courts] evaluate 'the timing of the discharge . . . in light of other evidence, or lack of other evidence, in the record.'"  *Id*. (second alteration in original) (quoting *Sherman*, 235 F.3d at 410).  "An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation."  *Green*, 459 F.3d at 915 (quoting *Peterson*, 406 F.3d at 524).  Accordingly, even assuming Mahler has established a *prima facie* case of retaliation, she fails to demonstrate the existence of a genuine dispute regarding pretext.

In order to succeed on her claim, Mahler "must both discredit [D]efendants' asserted reasons for [her] termination and show that the circumstances permit drawing a reasonable inference that the real reason for [her] termination was retaliation." *Hutton*, 812 F.3d at 684. This she cannot do. Mahler has advanced no evidence, save her own self-serving and unsworn statements and documents and the temporal proximity of the events, from which the court could draw an inference that the real reason for her termination was retaliation. As discussed above, the evidence in the record supports Defendants' proffered reason for Mahler's termination. *See, e.g.*, Appendix in Support of Motion at 29-30, 32-33; Defendants' Statement of Undisputed Facts ¶¶ 39-42, 47, 59-61. Further, Mahler had a history of raising concerns regarding alleged harassment without any adverse action taken against her over the course of her employment. *See generally* Defendants' Statement of Undisputed Facts ¶¶ 69-93. That Mahler believed her conduct to be reasonable does not render Defendants' proffered reason pretextual. For the same reasons that Mahler fails to demonstrate an issue of fact regarding pretext in her discrimination claim, none of the arguments she makes in support of her retaliation claim can draw a fair inference of causation between her protected activities and her termination. In short, even if the evidence presented by Mahler was sufficient to establish a *prima facie* case of retaliation, *see Green*, 459 F.3d at 915, she has not produced any additional evidence to support pretext other than temporal proximity, *see Gibson*, 776 F.3d at 542. Accordingly, the court shall grant the Motion.

## VII. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED**:

(1)     Defendants' Motion for Summary Judgment (docket no. 23) is **GRANTED**;

(2)     The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff Pamela J. Mahler; and

(3)     The Clerk of Court is **DIRECTED** to terminate all outstanding motions.

The Final Pretrial Conference is **CANCELED** and the trial date is **VACATED**.

**IT IS SO ORDERED.**

**DATED** this 28th day of February, 2018.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA